# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **MELISSA A. PANIZZI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 07 C 846** |
| | ) | |
| | ) | |
| **CITY OF CHICAGO BOARD OF** | ) | |
| **EDUCATION,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant City of Chicago Board of Education's ("Board") motion for summary judgment and Plaintiff Melissa A. Panizzi's ("Panizzi") motion to strike. For the reasons stated below, we grant the Board's motion for summary judgment and we deny Panizzi's motion to strike.

## BACKGROUND

Panizzi alleges that she was employed by the Board as a "probationary" teacher, beginning in August 2001. Panizzi acknowledges that, as a probationary teacher, her contract was subject to renewal by the Board at the end of each school year. Panizzi alleges that throughout the entire time she worked for the Board she

1

received numerous favorable acknowledgments and never received marks below "Superior" on her performance reviews.  Panizzi alleges that her contract was renewed every year through 2005.

In February 2006, Panizzi allegedly was absent or tardy several days due to the fact that her father underwent open heart surgery and she was personally undergoing fertility treatments.  Panizzi alleges that for each of the dates she was tardy or absent, she notified her principal, Dr. Charles Kyle ("Dr. Kyle"), in advance.  Panizzi alleges that she found out she was pregnant on March 1, 2006 and notified Dr. Kyle of her pregnancy on April 25, 2006.  On April 27, 2006, Panizzi was allegedly informed that she was not going to be re-hired for the 2006-2007 school year ("non-renewal decision").  The reasons that the Board allegedly gave for her non-renewal were: "Deficiencies with Professional and Personal Responsibilities (Attendance; Tardiness; Professional Judgment); and Deficiencies with Communication (Parent Conference Skills; Relations with Staff)." (Compl. Par. 20).

Panizzi brought the instant action alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983 ("Section 1983").  The Board brings the instant motion for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The

court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson,* 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Title VII Claim

Title VII, as amended by the Pregnancy Discrimination Act ("PDA"), prohibits an employer from "discriminat[ing] against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, . . . because of or on the basis of pregnancy, childbirth, or related medical conditions. . . ." 42 U.S.C. §§ 2000e-2(a)(1); 42 U.S.C. § 2000e(k). In order to defeat a motion for summary judgment on a Title VII discrimination or retaliation claim, a plaintiff can proceed under the direct method of proof or the indirect method of proof. *Hottenroth v. Village of Slinger,* 388 F.3d 1015, 1028 (7th Cir. 2004); *Clay v. Holy Cross Hospital,* 253 F.3d 1000, 1005 (7th Cir. 2001); *Pafford v. Herman,* 148 F.3d 658, 665 (7th Cir. 1998).

In this case, Panizzi's argument relating to discrimination is twofold. First, Panizzi argues that the Board discriminated against her due to the fact that she was

infertile and undergoing fertility treatments, which she alleges is discrimination on the basis of a "pregnancy related condition." Second, Panizzi argues that she was discriminated against because of the pregnancy itself.

A. Direct Method of Proof

Despite its name, the direct method of proof applied in Title VII cases does not require a plaintiff to produce *direct evidence*. *Perdomo v. Browner*, 67 F.3d 140, 144, n.1 (7th Cir. 1995). Under the direct method of proof, a plaintiff may rely on either a direct admission by a decision-maker that shows "his actions were based upon the prohibited animus" or circumstantial evidence that "allows a jury to infer intentional discrimination by the decision-maker." *Buie v. Quad/Graphics*, 366 F.3d 496, 503 (7th Cir. 2004)(quoting *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir. 2003))(internal quotations omitted). To satisfy the direct method of proof, the Seventh Circuit requires plaintiffs to put forth a "'convincing mosaic'" of direct or circumstantial evidence to show that the employer acted with discriminatory intent. *Walker v. Bd. of Regents of Univ. of Wis.*, 410 F.3d 387, 394 (7th Cir. 2005)(quoting *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003)).

In Panizzi's response to the Board's motion for summary judgment, she misconstrues the direct method standard of proof, arguing that by pointing to *any*

circumstantial evidence, she can satisfy the direct method standard and overcome a motion for summary judgment. (Ans. 4). In support of her argument that she has satisfied the direct method standard, Panizzi points only to what she claims to be suspicious timing of her termination as circumstantial evidence of discrimination. (Ans. 4). However, even if the Board's decision not to renew Panizzi's contract constituted suspicious timing, such evidence would still fall well short of the Seventh Circuit requirement that a plaintiff put forth a "convincing mosaic" of direct and circumstantial evidence, in order to satisfy the direct method standard of proof. *Walker*, 410 F.3d at 394. As such, Panizzi must proceed under the indirect burden-shifting method set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).


B. Indirect Method of Proof

Under the indirect method of proof, a plaintiff must first establish a *prima facie* case of discrimination by showing that: "(1) [s]he is a member of a protected class; (2) [s]he was meeting [her] employer's legitimate expectations at the time of the alleged adverse action; (3) [s]he was subjected to an adverse employment action; and (4) the employer treated similarly situated employees not in the protected class more favorably." *Scaife v. Cook County*, 446 F.3d 735, 739 (7th Cir. 2006). Once a

plaintiff has established a *prima facie* case of discrimination, the burden shifts to the

defendant to provide a legitimate non-discriminatory reason for the adverse action.

*Id.* at 739. If the defendant provides such a reason, the burden shifts back to the

plaintiff to show that the defendant's reason was a pretext for unlawful

discrimination. *Id.* at 739-40. In this case, Panizzi argues that she can establish a

*prima facie* case of discrimination both on the basis of her infertility/fertility

treatments and also on the basis of her pregnancy.


## 1. Infertility/Fertility Treatments

The first question that must be addressed in regard to Panizzi's allegation that

the Board discriminated against her on the basis of her infertility/fertility treatments

is whether her infertility or the fact that she was undergoing fertility treatments make

her a member of a protected class under Title VII and the PDA. The PDA

specifically amended Title VII's prohibition against discrimination "on the basis of

sex." 42 U.S.C. § 2000e(k). The PDA added language to the "definitions" section of

Title VII which was amended to state that "[t]he terms 'because of sex' or 'on the

basis of sex' include, but are not limited to, because of or on the basis of pregnancy,

childbirth, or related medical conditions; and women affected by pregnancy,

childbirth, or related medical conditions." *Id.* The PDA did *not* change the

underlying Title VII requirement that discrimination of this kind must be on the *basis of sex. Id.* Thus, in order for a condition to be covered under the PDA, it must be a condition that is gender specific to women. Infertility is not a condition that specifically affects women; nor are women the only class of individuals who undergo fertility treatment. *See Hall v. Nalco*, 2006 WL 2699337, at *1 (N.D. Ill. 2006)(stating that "infertility is a medical condition that afflicts men and women with equal frequency"). Therefore, even if the Board were to openly admit that it discriminated against Panizzi on the basis of the fact that she was infertile and undergoing fertility treatments, such discrimination would not be "on the basis of sex" and would not be covered under Title VII, notwithstanding the PDA amendment. Thus, Panizzi's infertility condition and the fact that she was undergoing fertility treatment would not put Panizzi in a protected class under Title VII and the PDA.

Panizzi argues that her fertility treatments put her in a class of female individuals that are *planning* to become pregnant, which she argues Congress intended to protect under the PDA. (Ans. 5-6). Panizzi points to miscellaneous statements made by members of Congress addressing the PDA, which Panizzi claims evince an intent to cover women under the PDA who are attempting to become pregnant. (Ans. 5-6). However, such an expansive reading of the PDA is not

supported by any Seventh Circuit precedent or the language of the statute itself, which only adds a prohibition against discrimination on the basis of "pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). As such, Panizzi's argument that she should be protected due to her intent to get pregnant fails.

### 2. *Prima Facie* Case of Pregnancy Discrimination

Panizzi also argues that she was terminated on the basis of the fact that she did, in fact, become pregnant. However, for several reasons, Panizzi has failed to establish a *prima facie* case of pregnancy discrimination.

### a. Member of a Protected Class

The Seventh Circuit has found that in order to meet the first prong of the plaintiff's *prima facie* burden for cases where the plaintiff alleges discrimination on the basis of an actual pregnancy, the plaintiff must show that she was pregnant and the employer was aware of her pregnancy. *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005 (7th Cir. 2001)(stating that the first prong of a pregnancy discrimination *prima facie* case requires that the plaintiff show that "she was pregnant . . . and her employer knew that she was pregnant"). Panizzi admits that her teaching status was only "probationary," which means that she was appointed on an annual basis and the

Board had the right to terminate her employment "at will" and for any reason. (SF Par. 10-12, 17). Panizzi admits that her supervisor, Dr. Kyle, was responsible for making the decision on behalf of the Board, whether or not to renew Panizzi's contract. (R SF Par. 18). In Panizzi's response to the Board's Local Rule 56.1 Statement, Panizzi admits to the Board's statement that "Dr. Kyle made the decision to non-renew plaintiff during his first entry into the computer system on February 23, 2006." (R SF Par. 22). Panizzi also admits that she "found out from her doctor that she was pregnant on March 1, 2006." (R SF Par. 47). Panizzi further admits that she did not inform Dr. Kyle that she was pregnant until on or about April 25, 2006. (R SF Par. 48). Thus, Panizzi has admitted that even *she* was not aware of her own pregnancy at the time the non-renewal decision was made on February 23, 2006. Thus, based on the facts provided by the parties, no reasonable trier of fact would conclude that the Board had any knowledge of Panizzi's pregnancy at the time that the Board made its decision not to renew Panizzi's contract. Therefore, Panizzi cannot show that she was a member of a protected class which is required to establish a *prima facie* case of pregnancy discrimination.


b. Legitimate Employment Expectations

Panizzi has also failed to show that she was meeting the Board's legitimate

employment expectations at the time of the non-renewal decision. The letter

notifying Panizzi of the non-renewal decision stated that the decision was made due

to Panizzi's "deficiencies with professional and personal responsibilities (attendance;

tardiness; professional judgment), and deficiencies with communication (parent

conference skills, relations with staff)." (R SF Par. 30). The Board has pointed to

evidence that Panizzi was tardy on numerous occasions during the 2005-2006 school

year, many of which occurred prior to Panizzi's alleged fertility treatments. (SF Par.

32-33). Panizzi admits that on four occasions in January and February 2006 she

arrived later than 8:45 a.m. (R SF Par. 33). Panizzi explains some of her tardiness

by pointing to evidence that she had doctor's appointments related to her fertility

treatment on those mornings. (SAF Par. 2). However, Panizzi also admits that on

eight other occasions during the 2005-2006 school year she arrived late to school. (R

SF Par. 32). Panizzi has provided no explanation for these tardy dates other than to

point out that on four of these eight days she was "tardy by less than ten minutes."

(SAF Par. 25). Thus, undisputed evidence in the record shows that the Board did

have reason to conclude that Panizzi had professional deficiencies relating to

tardiness at the time that Dr. Kyle made the non-renewal decision.

The Board has also pointed to evidence that Panizzi was absent nine times

between the start of the 2005-2006 school year and the time that Dr. Kyle made the

non-renewal decision. (SF Par. 34). Panizzi offered evidence explaining only two of these absences as related to her fertility treatment. (SAF Par. 10-11). However, there is a dispute in the record regarding the number of sick leave and personal leave absences that were allotted to teachers at Panizzi's school during the 2005-2006 school year. (R SAF Par. 29). As such, it is unclear from the record whether Panizzi was absent more times than was permitted by the Board. Therefore, we will not take Panizzi's absences into account for the purposes of summary judgment.

The Board has also pointed to evidence of numerous parental complaints about Panizzi. (SF Par. 35-45). The Board offered evidence in the form of deposition testimony by the assistant principle at Panizzi's school, Doris Kamys ("Kamys"), who alleged that she received complaints from approximately eight to nine parents about Panizzi. (SF Par. 36). The Board also offered deposition testimony by Dr. Kyle, who testified that these complaints were relayed to him by Kamys. (SF Par. 38). Finally, the Board produced a letter from a parent that outlined that parent's concerns about Panizzi and stated that when the parent confronted Panizzi, Panizzi acted rudely towards the parent. (SF Par. 42). In response to each of these statements of fact, Panizzi objected and filed a motion to strike, summarily arguing that the statements were inadmissible hearsay. (R SF Par. 35-45). Outside of her motion to strike, Panizzi provided no response to this evidence and did not

admit or deny the statements of fact.  (R SF Pars. 35-45).

When a court rules on a summary judgment motion, it may only consider evidence that would be admissible at trial under the Federal Rules of Evidence. *Whitted v. General Motors Corp.*, 58 F.3d 1200, 1204 (7th Cir. 1995).  Hearsay statements, which are out of court statements offered to prove the truth of the matter asserted, cannot be considered as evidence on summary judgment.  *See Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996)(evidence relied upon in support of or opposition to summary judgment must be of the type admissible at trial; a party may not rely upon inadmissible hearsay).  Several of the material facts objected to by Panizzi are not out of court statements at all and, thus, could not be considered hearsay.  (SF Par. 35, 36, 39).  The remainder of the material facts objected to are statements made by Kamys regarding the complaints she received and passed on to Dr. Kyle, as well as the letter sent by one of the parents to Kamys, which the Board attached as an exhibit.  (SF Par. 37-38, 40-45).  Panizzi is correct that the parents' complaints are out of court statements and if they were considered by this court as evidence that the substance of those complaints are true, then they would indeed be inadmissible hearsay.  However, these statements, along with the letter, are admissible as non-hearsay statements if they are offered solely for the purpose of showing that complaints about Panizzi were *in fact made* to school

officials. *See Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 430 (7th Cir. 2004)(finding that the district court correctly allowed an out-of-court statement into evidence for the limited purpose of the effect that it had on its listener). Thus, we deny Panizzi's motion to strike in its entirety and consider the statements offered by the Board only for the purposes of showing that complaints were made by parents about Panizzi.

Since Panizzi has made no effort to deny these statements other than to object to admissibility, all of the statements of fact offered by the Board in relation to parental complaints about Panizzi are deemed admitted pursuant to Local Rule 56.1 to the extent that such complaints were made and not for the the truth thereof. N.D. Ill. R. 56.1; *Dent v. Bestfoods,* 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003); *See also Jankovich v. Exelon Corp.,* 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1). Thus, it is undisputed that Panizzi's superiors received numerous complaints from "approximately eight to nine parents" of students in Panizzi's class and that these complaints addressed concerns about Panizzi's attendance, the quality of the education received by Panizzi's students, and Panizzi's professionalism and manner towards those parents. (SF Par. 35-45). Regardless of whether the substance of

these complaints were true, these statements constitute evidence that school officials received numerous complaints from parents of Panizzi's students. Panizzi's own complaint acknowledges that one student actually had to be removed from Panizzi's class. (Compl. Par. 16). These complaints constitute further evidence that Panizzi was not meeting the legitimate employment expectations of the Board at the time that the non-renewal decision was made. The Board's stated reason for the non-renewal included professional deficiencies involving poor communication with parents. The very fact that so many complaints were made by parents to Panizzi's superiors evinces a lack of communication between Panizzi and parents. Regardless of whether the complaints had any merit, these complaints constitute evidence that Panizzi was not meeting the Board's legitimate employment expectations.

In her response to the Board's motion for summary judgment, Panizzi has made no argument that she satisfied the Board's legitimate employment expectations and has not responded to the Board's assertion that she did not meet such expectations. However, in advancing other arguments, Panizzi made reference to the fact that she received favorable reviews from Dr. Kyle prior to the time of the non-renewal decision. (SAF Par. 15, 18, 20). The Seventh Circuit has concluded that the relevant inquiry is the plaintiff's performance at the time of the adverse action. *See, e.g., Hong v. Children's Memorial Hospital*, 993 F.2d 1257, 1262 (7th Cir.

1993)(stating that an employee cannot satisfy its burden by only showing that legitimate expectations were met for some period of time before termination).

The Board has put forth undisputed evidence that Panizzi did not meet the Board's legitimate expectations due to the fact that she was tardy and the Board was receiving numerous complaints from parents at the time that the non-renewal decision was made.  (SF Par. 32-45).  Thus, based on the evidence presented at summary judgment, no reasonable trier of fact could conclude that Panizzi met the Board's legitimate employment expectations.


c. Similarly Situated Employees

The Board argues that Panizzi has not satisfied the *prima facie* element which requires a plaintiff to show that similarly situated employees were treated more favorably.  In her opposition to summary judgment, Panizzi states that the Board "retained several female teachers for the 2006/2007 school year . . . [and that] none of these women . . . were pregnant at the time of renewal."  (Ans. 8-9)  First, it is unclear what evidence Panizzi is relying on for these assertions.  Panizzi cites to Paragraph 14 of her Statement of Additional Facts.  However, that statement pertains only to the employee that Panizzi alleges was brought in to replace her, not to the employees who were retained.  (SAF Par. 14).  A review of the evidence presented

by Panizzi reveals no information regarding the employees that were retained or non-renewed and includes no information about the pregnancy status of any of these individuals.  In contrast, the Board has presented evidence, and Panizzi has admitted to the fact, that a total of seven probationary teachers were non-renewed in 2006 and that four other probationary teachers were non-renewed in 2006 for similar performance deficiencies.  (SF Par. 29-30).  In her deposition, Panizzi testified that three other non-pregnant employees were retained who she alleged had similar employment deficiencies.  (SF Par. 55).  However, the Board has presented evidence and Panizzi has admitted to the fact that all three of these teachers mentioned by Panizzi were not probationary teachers, but rather tenured teachers who were not subject to non-renewal "at will."  (SF Par. 56-58).  Therefore, these employees could not be considered "similarly situated" for the purposes of establishing a *prima facie* case.

Panizzi also argues that because the person whom she claims replaced her as a teacher was not pregnant, she has satisfied the element of showing that other similarly situated employees outside the protected class were treated differently. (Ans. 8-9).  First, there is a dispute over the issue of whether the employee referred to by Panizzi was, in fact, Panizzi's replacement.  Second, Panizzi has not offered any evidence to show the pregnancy status of the alleged replacement employee.

Paragraph 14 of Panizzi's Statement of Additional Facts declares that "Melissa Panizzi was replaced by Kathy Vail who had the same teaching certifications but was not pregnant." (SAF Par. 14). In support of this statement, Panizzi cites to her own deposition and the deposition of Dr. Kyle. (SAF Par. 14). However, in neither of the cited deposition excerpts is there evidence regarding the pregnancy status of the alleged replacement employee. (SAF Par. 14). Thus, Panizzi has not provided support for her statement that the alleged replacement employee was not pregnant. No other evidence exists in the record indicating the pregnancy status of the alleged replacement employee. Therefore, Panizzi has not met her burden of establishing that this employee was outside of the protected class. However, even if she had met that burden, the employee she claims replaced her would not qualify as "similarly situated" given that this employee had never worked at the school and, unlike Panizzi, the school had no documented knowledge of this employee's professional deficiencies. Therefore, Panizzi has failed to state a *prima facie* case.

### 3. Nondiscriminatory Reason and Pretext

As stated above, Panizzi has failed to establish a *prima facie* case. Once a plaintiff fails to state a *prima facie* case under the indirect method, the claim fails and the defendant is entitled to summary judgment. *Scaife*, 446 F.3d at 739-40.

However, even if Panizzi had established a *prima facie* case, her Title VII claim would still fail under the remaining prongs of the indirect method, which we will discuss below for the purposes of summary judgment.

### a. Legitimate Non-Discriminatory Reason

Once a plaintiff has established a *prima facie* case of discrimination, the burden shifts to the defendant to provide a legitimate non-discriminatory reason for the adverse action. *Scaife*, 446 F.3d at 739. In this case, as stated above, the Board has presented evidence it was notified of Plaintiff's performance deficiencies and had received numerous complaints from parents of Panizzi's students shortly before the non-renewal decision was made. (SF Par. 32-45). These performance deficiencies were the reason provided to Panizzi for her non-renewal. Because we have found that the Board has presented undisputed evidence of these deficiencies the Board has, likewise, succeeded in putting forth a legitimate non-discriminatory reason for the non-renewal. However, in this case the Board has gone even further by pointing to evidence, that Panizzi has admitted, that the Board was facing budget cuts at the time the non-renewal decision was made and that the school was projected to lose seven teachers based on projected student enrollment. (R SF Par. 19). Panizzi argues that because the number of kindergarten teachers at Panizzi's school ultimately remained

the same in 2006-2007 and the fact that the school actually hired additional teachers, the budget cuts should not be considered a legitimate non-discriminatory reason. However, as indicated above, the inquiry in this case is confined to the motivations of the Board at the time that the non-renewal decision was made. Panizzi has admitted to the fact that at that time, the Board was facing budget cuts and she has not presented any countervailing evidence demonstrating an intent by the Board to rehire teachers after the end of the 2005-2006 school year. (R SF Par. 19). Therefore, the Board has provided legitimate and non-discriminatory reasons for the adverse action against Panizzi.

    b. Pretext

    Under the indirect method, if the defendant provides a legitimate and nondiscriminatory reason for the adverse action, the burden shifts back to the plaintiff to show that the defendant's reason was a pretext for unlawful discrimination. *Scaife*, 446 F.3d at 739-40. Pretext can be shown by establishing: "(1) that a discriminatory reason more likely motivated the employer, or (2) that the employer's proffered explanation is unworthy of credence." *Hiatt v. Rockwell Intern. Corp.*, 26 F.3d 761, 768 (7th Cir. 1994). Panizzi makes two arguments to support her case on the pretext prong. First, Panizzi points to her superior reviews

prior to the time of the termination.  (Ans. 9).  Second, Panizzi argues that because the school ultimately retained the same number of teachers, the budget cuts cannot be used as a legitimate non-discriminatory argument.  (Ans. 9).  These arguments have been discussed above and no reasonable trier of fact could find that these arguments can show that the Board's multiple explanations are unworthy of credence.  Another argument that Panizzi raised, although outside of the context of the pretext argument, is that the non-renewal decision constituted suspicious timing because it came shortly after the time that Panizzi allegedly notified the school she would be undergoing fertility treatment.  (Ans. 4).  The Seventh Circuit has recognized that adverse employment actions that occur in close temporal proximity to an employee's exercise of protected activity can be a factor to consider when determining whether an employer's proffered explanation is a pretext.  *King v. Preferred Technical Group*, 166 F.3d 887,  893 (7th Cir. 1999).  However, the Seventh Circuit has also recognized that suspicious timing alone is rarely sufficient to establish pretext.  *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005).  In this case, Panizzi's pretext argument is severely weakened by her admission to the Board's statement that Dr. Kyle made the decision to renew or non-renew *all* of the probationary teachers on the same date of February 23, 2007.  (R SF Par. 18).  Undisputed evidence also shows that the non-renewal decision was made before Panizzi notified

Dr. Kyle or the Board that she was pregnant and, in fact, the decision was made prior to the time that Panizzi *herself* knew of her pregnancy. (R SF Par. 47-48). Further, Panizzi has also admitted that the Board, via Dr. Kyle, was aware of complaints by parents about Panizzi and the Board had reason to be aware of several dates that Panizzi was tardy. (R SF Par. 35-45). On the whole, the evidence offered by Panizzi falls well short of establishing that the Board's reasons for the non-renewal decision was a pretext for discriminatory reasons.

## II. Section 1983 Claim

In her complaint, Panizzi also brings a claim under Section 1983. (Compl. Par. 1). In her opposition to summary judgment, Panizzi abandons this claim and presents no argument relating to it. Panizzi has made no effort to identify a constitutional injury and has not alleged facts necessary for bringing a Section 1983 claim against a municipality. As such, Panizzi's Section 1983 claim fails.

## CONCLUSION

Based on the foregoing analysis, we grant the Board's motion for summary judgment in its entirety and we deny Panizzi's motion to strike.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   November 19, 2007